UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00297-FDW
(3:16-cr-00042-FDW-DSC-2)

| | |
|---|---|
| **ROBERT DONEIL CLYBURN, JR.,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of Petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.    BACKGROUND**

On February 17, 2016, Petitioner Robert Doneil Clyburn, Jr., ("Petitioner") was charged in a Bill of Indictment with one count of crack cocaine (cocaine base) trafficking conspiracy in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count One); one count of cocaine trafficking conspiracy in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count Two); six counts of possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts Eight, Eleven, Thirteen, Sixteen, Eighteen, and Twenty-One); one count of possession with intent to distribute twenty-eight (28) grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Twenty-Four); three counts of

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:18-CV-00297-FDW, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:16-CR-00042-FDW-DSC-2.

aiding and abetting the possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2 (Counts Twenty-Six, Forty-Six, and Forty-Seven); one count of being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Forty-Eight); and one count of possession of firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924 (Count Forty-Nine). [CR Doc. 1: Bill of Indictment]. The Government filed an Information pursuant to 21 U.S.C. § 851 to establish Petitioner's prior felony drug conviction for purposes of punishment under 21 U.S.C. § 841. [CR Doc. 17: § 851 Information].

The parties reached a plea agreement pursuant to which Petitioner agreed to plead guilty to Counts Two, Twenty-Four, and Forty-Eight and the Government agreed to dismiss Counts One, Seven, Eight, Eleven, Thirteen, Eighteen, Twenty-One, Twenty-Six, Forty-Six, Forty-Seven, and Forty-Nine. [CR Doc. 165: Plea Agreement]. The parties also agreed, pursuant to Rule 11(c)(1)(B), to jointly recommend that the Court make the following findings and conclusions as to the U.S. Sentencing Guidelines:

> a. The amount of crack cocaine (cocaine base) that was known to or reasonably foreseeable by the defendant was more than 150 grams but less than 196 grams.
>
> b. The amount of cocaine (powder) that was known to or reasonably foreseeable by the defendant was more than 2 kilograms but less than 3.5 kilograms.

[Id. at 2].

In the plea agreement, Petitioner stipulated that there was a factual basis for his guilty plea. He also stipulated that he had read and understood the factual basis that was attached to his plea agreement and that the Court and the United States Probation office may use it, without objection by Petitioner, to determine the applicable advisory guideline range or the appropriate sentence

2

under 18 U.S.C. § 3553(a), "unless the Factual Basis itself notes that the Defendant's right to object to a particular fact(s) was explicitly reserved." [CR Doc. 165 at ¶ 15]. Petitioner agreed to waive the right to contest his conviction and sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. [Id. at ¶ 20].

At the plea hearing, Petitioner affirmed that he was, in fact, guilty of the charges to which he was pleading guilty. [CR Doc. 296 at 8: Plea Hearing Tr.]. The terms of the plea agreement were reviewed, including that the amount of cocaine reasonably foreseeable to Petitioner on Count Two was 500 grams or more of cocaine and that the charge on Count Twenty-Four involved 28 grams or more of crack cocaine. [Id. at 4-5]. Petitioner also testified that he had spoken with his attorney about how the U.S. Sentencing Guidelines might apply to Petitioner's case and that he understood that the district judge would not be able to determine the applicable guideline range until after Petitioner's presentence report was prepared and Petitioner had had an opportunity to comment on it. [Id. at 6]. Petitioner further testified that he understood that if his sentence is more severe than he expects or if the Court does not accept the Government's recommendation, Petitioner is still bound by his plea and cannot withdraw it. [Id. at 7]. Petitioner also acknowledged his understanding that the sentencing recommendation set forth in the plea agreement was not binding on the Court. [Id. at 9, 11].

Further, Petitioner affirmed having read, understood, and agreed with the factual basis that had been filed in his case and testified that no one had "threatened, intimidated or forced" him to plead guilty. [Id. at 12]. Petitioner testified that he was satisfied with the services of his attorney and declined the opportunity to say anything regarding those services. [Id. at 13]. Finally, Petitioner testified that he had heard and understood all parts of the plea proceedings and still

3

Case 3:18-cv-00297-FDW    Document 10    Filed 08/21/20    Page 3 of 15

wished to plead guilty. [Id. at 13]. The Court then found that Petitioner's guilty plea was knowingly and voluntarily made and accepted Petitioner's plea. [Id.].

Petitioner was sentenced on November 29, 2016. Before the sentencing hearing, a probation officer prepared a Draft Presentence Investigation Report ("Draft PSR"). [CR Doc. 200: Draft PSR]. In the Draft PSR, after restating the allegations of the Factual Basis, the probation officer wrote:

> In addition to the Factual Basis, it is noted that the total amount of crack cocaine as listed above in reference to the defendant equals 287.7 grams, and the amount of cocaine equals 3,340.7 grams or 3.3407 kilograms. Therefore, the defendant is responsible for the equivalent of 1,695.5167 kilograms of marihuana.

[Id. at ¶ 21]. In the Draft PSR, the probation officer recommended a base offense level of 30 for Count Twenty-Four, noting that U.S.S.G. §2D1.1 "calls for a base offense level of 30 because the amount of marijuana equivalent is at least 1,000 kilograms but less than 3,000 kilograms." [Id. at ¶ 28]. The probation officer provided that the marijuana equivalents of 287.7 grams of cocaine base and 3,340.70 grams of cocaine were 1,027.37 kilograms and 668.14 kilograms, respectively, for a total marijuana equivalent of 1,695.5167 kilograms. [Id.]. After considering Petitioner's specific offense characteristics and acceptance of responsibility, the recommended Total Offense Level (TOL) was 29. [CR Doc. 200 at ¶ 44].

As to Petitioner's Criminal History Category, the probation officer recommended that no points be assigned for Petitioner's three convictions from 2006, 2007, and 2008, respectively. The probation officer reasoned that, "[a]ccording to the Bill of Indictment in the instant offense, the conspiracy is alleged to have occurred from on or about May of 2003 through on or about November 10, 2015." [CR Doc. 200 at ¶¶ 48, 51, 52; CR Doc. 219 at ¶¶ 50, 53, 54]. The Government objected to this recommendation. [CR Doc. 205 at 1-2: Govt. Objections to PSR].

The Government argued that it had "no evidence that [Petitioner] was involved in this conspiracy until 2013" and if it had such evidence, "it would have charged it and included such conduct in the Factual Basis." [Id.]. The Government calculated that Petitioner's three eligible convictions warranted an additional six criminal history points, yielding 10 total points in Paragraph 56 and a total criminal history score of 12/V. [Id. at 2]. Finally, the Government concluded that a TOL of 29 and a Criminal History Category of V yielded a guidelines range of 140 to 175 months. [Id.].

Petitioner objected to, among other things, the recommended base offense level of 30. He argued that "[b]ased on the plea agreement, the [Petitioner] and the Government agreed that the amount of crack cocaine that was known to or reasonably foreseeable by the [Petitioner] was more than 150 grams but less than 196 grams." [CR Doc. 206 at ¶ 1: Pet. Objections to PSR]. He continued, "[b]ased on U.S.S.G. § 2D1.1(7), the base offense level should be 26." [Id.]. In the final PSR, the probation officer addressed Petitioner's objection and more fully explained the discrepancy between the drug amount in the plea agreement and factual basis and the drug amount in the PSR. [See CR Doc. 219 at ¶ 30: PSR]. Specifically, the probation officer explained as follows:

> As outlined in paragraph 23,[2] the total drug amounts attributable to the defendant are 287.7 grams of crack cocaine and 3,340.7 grams of cocaine. The Factual Basis and the Plea Agreement state that the total amount attributable to the defendant is more than 150 grams but less than 196 grams of crack cocaine and more than 2 kilograms but less that 3.5 kilograms of cocaine. <u>In either instance, the United States Sentencing Commission Guidelines for violation of 21 U.S.C. § 841(a)(1) is found in USSG §2D1.1 and calls for a base offense level of 30 because the amount of marijuana equivalent is at least 1,000 kilograms but less than 3,000 kilograms</u>. USSG §2D1.1.

[Id. at ¶ 30 (emphasis added)]. The probation officer noted in response to the Government's Criminal History Category objection that she had received a statement from Petitioner in which

---

[2] Paragraph 23 of the final PSR corresponds to Paragraph 21 of the Draft PSR.

Petitioner admits joining the conspiracy in 2004 and that she "defers to the court in this matter." [CR Doc. 219 at 24].

At Petitioner's sentencing hearing, Petitioner again testified that he was guilty of the three felonies to which he had pleaded guilty and affirmed his testimony at the plea hearing. [CR Doc. 297 at 2-4: Sentencing Tr.]. The Court found, after reviewing the record, including the Rule 11 colloquy, that Petitioner's guilty plea "was knowingly and voluntarily made and [Petitioner] fully understood the charges, potential penalties, and consequences of his plea." [Id. at 5]. The Court then addressed the parties' objections to the PSR, starting with the criminal history points. The Court agreed with the Government's argument that Petitioner would receive a "double windfall" if no criminal history points were assigned for his 2006, 2007, and 2008 drug convictions because they involved the same conspiracy to which he was pleading guilty and if the drug amount for such conspiracy included only the amount attributable to Petitioner since 2013. [Id. at 7-15 (quote at 14)]. The Court recessed the proceedings to allow the parties to resolve the issue by agreement, specifically whether Petitioner would agree to either have the criminal history points assigned or have the drug amount adjusted, whichever was more favorable to Petitioner. [Id. at 15-17]. After the recess, the Government explained the parties' agreement that three criminal history points would be assigned for Petitioner's 2008 conviction at Paragraph 54 of the PSR and no points would be assigned for the 2006 and 2007 convictions.[3] This would yield a criminal history score of nine and a Criminal History Category of IV. [Id. at 18].

Thereafter, Petitioner's counsel acknowledged that he had miscalculated the offense level and he "[didn't] know at this point if that changes how [Petitioner] feels about going forward right now." [Id. at 18]. The Government stated that counsel had also discussed this issue during the

---

[3] The Government acknowledged that despite these offenses occurring in three different years, they were consolidated, and the sentence imposed on the same day, February 19, 2015. [CR Doc. 297 at 17-18].

recess and agreed that the base offense level is 30 regardless of whether the amount of crack cocaine in the plea agreement or the amount of crack cocaine found by the probation officer is used to determine the marijuana equivalency. [Id. at 19]. Petitioner's counsel agreed that the drug amount calculated by the probation officer was correct and that, despite counsel's miscalculation, the TOL was 29 either way. [See id.]. The Court again recessed to allow Petitioner's counsel to discuss the matter with Petitioner. [Id. at 20]. After the recess, Petitioner addressed the Court, saying he was "confused" and "really not understanding." [Id. at 20-21]. After further discussion with the Court, Petitioner explained that his confusion regarded the drug amount he agreed to in his plea agreement versus the drug amount found by the probation officer. [Id. at 23]. He stated as follows:

> All I was saying was that me and him agreed upon, I understand the sentence was, the amount, my amount, and what I was pleading to. Today, it's just been a whole other number. That's all I'm saying. That's why I'm confused, because I would have never entered the plea if I would have known that's not what he meant by. Now he's telling me he didn't calculate right. That's all I'm saying.

[Id. at 23]. The Government explained, "[w]hat happened, Your Honor, is that we had a stipulated drug amount and probation found a higher number as to crack cocaine…. That being said, Your Honor, the marijuana equivalency of that amount of drugs still comes out to the same offense level." [Id. at 25]. From there, the following exchange occurred:

> THE COURT: So it wouldn't make any difference.
>
> MS. DILLON: So it wouldn't make any difference. So, you know, I know Mr. Clyburn understands that, that – that although probation did find the higher drug amount, it didn't add any more offense levels to your offense level calculation, if that makes sense.
>
> THE COURT: And I understand that, but do you understand that?
>
> THE DEFENDANT: Yes, sir, I do.

7

>THE COURT: Well, then, we can proceed if you understand it didn't change – because the ultimate number, the offense level didn't change, then there's really no harm to you.
>
>I don't want – I don't want to push you into a sentence where you don't feel that you have a working – a working understanding of the presentence report and your plea agreement.
>
>THE DEFENDANT: I mean, there's nothing going to change, so I'll go ahead with it.
>
>THE COURT: Well, if you're ready to proceed, then we'll proceed. But I – I want to make sure you do understand that I understand your concern that the drug amount is different, but it didn't --- because it didn't change the offense level, it didn't change the offense level, it didn't have any effect on your plea agreement.
>
>THE DEFENDANT: Okay.
>
>THE COURT: You understand that?
>
>THE DEFENDANT: Yeah, I understand you. Yes, I do.

[Id. at 25-26].

After confirming that Petitioner's objections to the offense level calculation were withdrawn, the Court noted the parties' agreement that the proper Criminal History Category was IV and the TOL was 29, which yielded a new guidelines range of 121 to 151 months. [Id. at 27]. The Court also noted the statutory mandatory minimum sentence of 120 months. [Id.]. After hearing counsels' arguments as to Petitioner's sentence and discussing the sentencing factors, the Court sentenced Petitioner to a term of imprisonment of 121 months on each count, to be served concurrently. [Id. at 27-39]. Judgment on Petitioner's conviction was entered on December 9, 2016. [CR Doc. 260].

Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Fourth Circuit. [CR Doc. 262]. The appeal, however, was dismissed on the Government's motion. The Fourth Circuit concluded, upon review of the plea agreement and the transcript of

the plea hearing, that Petitioner "knowingly and voluntarily waived his right to appeal and the issue [Petitioner] seeks to raise on appeal falls squarely within the compass of his waiver of appellate rights." [CR Doc. 326].

Thereafter, Petitioner timely filed the present motion to vacate on June 6, 2018. [CV Doc. 1]. He argues that his guilty plea was involuntary due to ineffective assistance of counsel and that the Court erred in calculating the drug amount for which he was responsible.[4] [See id.]. Petitioner asks the Court to vacate his conviction and sentence, to "redact" the paragraphs in the plea agreement setting forth the parties' agreement as to the amount of drugs involved in the offense, and resentence him based on the lower drug amount and a Criminal History Category of III. [Id. at 9]. The Government timely responded to Petitioner's motion to vacate on the Court's initial screening order and Petitioner replied. [CV Docs. 2, 3, 7].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

---

[4] In his supporting memorandum, Petitioner sets out a laundry list of ways he contends his counsel "failed to adequately fulfill his professional duties and responsibilities." [CV Doc. 1 at 21-22, 24]. The bulk of these contentions are vague and wholly conclusory and may disregarded by the Court on that ground alone. United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations). To the extent these claims do not relate to the grounds set forth in Petitioner's motion to vacate, the Court has considered them and found them to be without merit, in any event. To the extent the claims do relate to Petitioner's primary grounds for relief, the Court addresses them below.

9

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The petitioner's "subjective preferences" are not dispositive, but rather the test is "whether proceeding to trial would have been objectively reasonable in light of all of the facts," United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012), and whether the

petitioner has shown that there is "contemporaneous evidence" supporting his expressed preferences, Lee v. United States, 137 S. Ct. 1958, 1967 (2017).

In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

### A. Guilty Plea

Petitioner claims that his counsel "induced" him to plead guilty "based on patently erroneous and incorrect advice." [CV Doc. 1 at 3]. Petitioner claims "there is nothing in the record

11

to demonstrate that [he] had any understanding of the exact nature of the offense(s) charged, or the factual basis for it." [Id.]. Petitioner also contends that he "could not have understood the consequences of entering and accepting the plea agreement with the information provided to him by defense counsel [J]oseph." [Id. at 4]. In his memorandum, Petitioner explains that he "was under the distinct impression from the information provided to him by defense counsel Joseph that any impending federal sentence and term of imprisonment would be determined by calculating **150 grams of 'crack' cocaine and seven (7) grams of powder cocaine along with a Criminal History Category of III, not IV."** [Id. at 28 (emphasis in original)]. Petitioner states he "had no idea" that the Government "would unjustifiably increase the total of cocaine powder by 3,300 grams when determining Petitioner's sentencing exposure." [Id.].

Plaintiff's arguments are not well taken. Petitioner's argument that his guilty plea was involuntary is belied by his testimony at the plea hearing, which he confirmed at his sentencing hearing. At the plea hearing, Petitioner testified that he understood the charges and penalties against him, was guilty of those charges, that he had read and agreed with the factual basis, that no one had threatened, intimidated, or forced him to plead guilty, and that he was satisfied with the services of his attorney. Then, at the sentencing hearing, Petitioner affirmed this testimony. Because Petitioner's claim that his plea was involuntary contradicts his sworn testimony at the plea hearing, this claim is without merit and will be denied. Lemaster, 403 F.3d at 221-22.

Furthermore, Petitioner has failed to show that his guilty plea was involuntary due to ineffective assistance of counsel. Petitioner raises a variety of ways in which his counsel allegedly performed deficiently, including that his counsel did not investigate the case, did not obtain records to show that Petitioner was incarcerated from 2009 to 2013, did not properly explain the plea agreement or the consequences of pleading to § 922(g) charge, and did not properly advise him of

his sentencing exposure. [CV Doc. 1 at 21-22]. Petitioner, however, does not contend his counsel promised him a lower sentence.

Here, even if Petitioner could show that his counsel's performance was deficient, he has not and cannot show prejudice. Before the Magistrate Judge accepted Petitioner's plea, Petitioner affirmed that he understood that the Court was not bound by the parties' recommendations; that the Court could not determine the applicable guideline range until after Petitioner's PSR was prepared and Petitioner had had an opportunity to comment on it; that the Court could impose a sentence up to the statutory maximum; and that he could not withdraw his plea if he received a higher sentence than he anticipated. Therefore, any misinformation that may have been provided by counsel to Petitioner was overcome at the Rule 11 hearing. See United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995) (holding that defendant is not prejudiced by counsel's misadvice as to sentence if he is properly advised as to sentencing exposure during the Rule 11 hearing).

Furthermore, and perhaps most significantly, the Court's drug amount finding, which was higher than that agreed to by the parties in the plea agreement, did not change the applicable offense level. And the mandatory minimum sentence of 120 months on Counts Two and Twenty-Four under the § 851 Information remained operative. Petitioner was sentenced to only one month above this minimum. Also, Petitioner cannot show prejudice because he seeks only resentencing, not to proceed to trial on all counts. Moreover, Petitioner received significant benefit from pleading guilty, including dismissal of the § 924(c) charge, which would have required a consecutive five-year sentence. As such, he cannot show that proceeding to trial would have been objectively reasonable. See Fugit, 703 F.3d at 260.

Petitioner, therefore, cannot establish ineffective assistance of counsel with respect to his guilty plea and the Court will deny this claim.

### B. The Court's Drug Amount Calculation

Petitioner claims that the Court erred in determining the drug amount for which he was responsible and by adopting the findings set forth in the PSR. [CV Doc. at 5, 40-42]. Petitioner also argues that the Court erred in determining that his Criminal History Category was IV. [Id. at 32]. These arguments fail for several reasons.

A knowing and voluntary waiver of the right to pursue post-conviction relief is enforceable. See Lemaster, 403 F.3d at 220. Petitioner waived the right to seek post-conviction relief, including relief under § 2255, as part of his plea agreement. As noted, the Fourth Circuit held on direct appeal that this waiver was valid. Furthermore, Petitioner's assertion that he could not waive the right to challenge a sentence that had not yet been imposed is without merit. See United States v. Brown, 232 F.3d 399, 403 (4th Cir. 2000) (excepting only those claims that a sentence is above the statutory maximum or was imposed based on a constitutionally impermissible factor such as race). As such, Petitioner's challenges to his sentence are barred by his plea agreement waiver. See Lemaster, 403 F.3d at 221-23.

Petitioner's challenges to his sentence are also subject to dismissal as conclusory, see Dyess, 730 F.3d at 359-60; because the alleged guidelines errors are not reviewable on collateral review, United States v. Mikalajunas, 186 F.3d 490, 496-97 (4th Cir. 1999); and because Petitioner makes no showing that the Court's findings were incorrect.

As such, the Court will deny Petitioner's claim for relief under § 2255 based on the Court's alleged miscalculation of the drug amount for which Petitioner was held responsible for sentencing purposes and the Court's finding of a Criminal History Category of IV.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 Motion to Vacate, including Petitioner's request for an evidentiary hearing.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: August 21, 2020

Frank D. Whitney
United States District Judge